IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SCOTT ANDREW THOMAS, | ) | 8:07CV401 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| EUGENE OLIVETO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Defendants Denise Gaines ("Gaines") and Eugene Oliveto's ("Oliveto")[1] Motion to Dismiss, alternatively styled as a Motion for Summary Judgment (filing no. 28), and Defendant Jeff Newton's ("Newton") Motion to Dismiss (filing no. 37). As set forth below, Defendants' Motions are granted.

## I.   BACKGROUND

Plaintiff Scott Andrew Thomas filed his Complaint in this matter on October 9, 2007. (Filing No. 1.) The court thereafter conducted an initial review and gave Plaintiff the opportunity to amend his claims. (Filing No. 9.) Plaintiff filed an Amended Complaint on May 22, 2008, which is the operative complaint in this matter. (Filing No. 12.) After reviewing the Amended Complaint, the court dismissed claims against Douglas County Department of Corrections Medical

---

[1]Plaintiff has named "Denise Green" and "Eugene Olivelto" as Defendants. It appears from Defendants' filings that these individuals are actually Denise Gaines and Eugene Oliveto. (Filing No. 23.) The court will direct the Clerk of the court to update the court's records to reflect the actual names of these parties. For clarity, the court will use Defendants' actual names for purposes of this Memorandum and Order.

Department, and allowed Plaintiff's Eighth Amendment claims to proceed against Gaines, Newton, and Oliveto. (Filing No. 15).

## II. GAINES AND OLIVETO'S MOTION TO DISMISS

### A. Background

Pending before the court is Gaines and Oliveto's Motion to Dismiss, which was alternatively styled as a Motion for Summary Judgment. (Filing No. 28.) For the reasons set forth in the court's January 25, 2010, Memorandum and Order, the court treats Defendants' Motion as one for summary judgment in accordance with Federal Rule of Civil Procedure 12(d). (Filing No. 31.) The court notes that, despite having more than three months in which to do so, Plaintiff did not file an opposition to Defendants' Motion and has submitted no evidence in support of his allegations. (*See* Docket Sheet.)

The court's local rules require that the party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants Gaines and Oliveto have submitted a statement of material facts in accordance with the court's rules, and have also submitted evidence that was properly authenticated by affidavit. However, Plaintiff has done neither. In light of this, the court adopts the following undisputed material facts, all of which were set forth by Gaines and Oliveto in their Brief.

### B.     Relevant Undisputed Facts

1.    At all relevant times, Plaintiff was incarcerated at the Douglas County Department of Corrections ("DCC").

2.    Plaintiff has been under psychiatric care since age 12. He has been diagnosed with various disorders including attention deficit hyperactive disorder, social anxiety disorder, bipolar disorder, and numerous learning disabilities.

3.    Gaines is a mental health practitioner employed by Correct Care Solutions to provide care and treatment to inmates housed at DCC. Gaines began working at DCC on August 1, 2007.

4.    Oliveto is a psychiatrist employed by Correct Care Solutions to provide psychiatric care to inmates housed at DCC. Oliveto began working at DCC in July, 2007.

5.    Plaintiff alleges mistreatment during two separate incarcerations at DCC; the first occurring from August 2006 to February 28, 2007, and the second occurring from July 24, 2007, to an unspecified date.[2]

---

[2] The court's records show that Defendant's second incarceration ended on May 5, 2008. (Filing No. 12 at CM/ECF p. 11.)

3

6. Gaines and Oliveto did not work at DCC during Plaintiff's initial incarceration.

7. During Plaintiff's second incarceration, he claims that Gaines and Oliveto were deliberately indifferent to his medical needs and failed to provide him medication for his psychological disorders.

8. Gaines examined Plaintiff on August 13, 2007, at which time Plaintiff stated that he would like to be prescribed medication for his psychological disorders. Gaines is not authorized to prescribe medication. Following this examination, she discussed her observations with Oliveto.

9. On August 24, 2007, Oliveto prescribed Celexa and Risperdal to Plaintiff, based on his review of Plaintiff's entire medical chart and his discussion with Gaines.

10. Gaines continued to monitor Plaintiff, examining him on August 20, 2007, and again on September 17, 2007.

11. Oliveto examined Plaintiff on September 19, 2007, at which time he diagnosed Plaintiff with schizoaffective disorder, bipolar disorder, impulse control disorder, mild mental retardation, and adult antisocial behavior. Based on this examination, he continued the medications he had already prescribed to Plaintiff.

12. Plaintiff was placed on suicide watch repeatedly throughout his incarceration.

13. Plaintiff refused to take any of the medications prescribed by Oliveto from March 3, 2008, to April 8, 2008.

14.     Gaines and Oliveto claim that they properly and timely treated Plaintiff's mental health conditions, and did not depart from the generally recognized standard of care in any respect.

### C.     Analysis

#### 1.      Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### 2. Plaintiff's Eight Amendment Claim

Liberally construed, Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that Defendants Gaines and Oliveto violated his Eighth Amendment right to receive medical care while incarcerated because they did not provide him with proper medications and treatment for his psychological disorders. (Filing No. 12.) As set forth below, the court finds that Defendants provided appropriate medical care to Plaintiff, in accordance with their obligations under the Eighth Amendment. Therefore, no Eighth Amendment violation occurred and Defendants Gaines and Oliveto are entitled to summary judgment.

To sustain a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually new of but deliberately disregarded those needs. *Hartsfield v. Colburn*, 491 F.3d 394 (8th Cir. 2007). "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle,* 429 U.S. at 103-104). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; see also *Davis v. Hall*, 992 8 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198

6

F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). Bare assertions or a "self-diagnosis," without more, are not enough to sustain an Eighth Amendment claim. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); see also *Long v. Nix*, 86 F.3d 761 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

As previously stated, Plaintiff alleges mistreatment during two separate incarcerations at DCC. However, based on the undisputed material facts, Gaines and Oliveto did not work at DCC during Plaintiff's initial incarceration. (*See* Filing No. 29 at CM/ECF pp. 3-4.) Thus, any claim must be based on his subsequent incarceration, which began on July 24, 2007.

Assuming, without deciding, that Plaintiff's medical condition during his second incarceration was serious, Gaines and Oliveto were not deliberately indifferent to his needs. Plaintiff's allegations of "deliberate indifference" are that he did not receive proper medications and treatment for his mental health conditions. (Filing No. 12 at CM/ECF p. 11.) However, Defendants' evidence includes twenty pages of "Mental Health Contact Notes" and other records spanning from August 13, 2007, to April 22, 2008, concerning Plaintiff's treatment, prepared by Gaines, Oliveto, and other mental health practitioners at DCC. (Filing No. 30-1 at CM/ECF pp. 8-28.) Based on these records, Oliveto prescribed Celexa and Risperdal to

7

Plaintiff within one month of his incarceration,[3] Oliveto performed a thorough psychiatric evaluation of Plaintiff and diagnosed him with numerous mental illnesses, and Gaines and Oliveto met with Plaintiff numerous times throughout his incarceration to discuss his care. (*Id.*) Further, Oliveto attested that Plaintiff was "continuously monitored" by he and Gaines. (*Id.* at CM/ECF p. 4.)

Plaintiff's Eighth Amendment claim may be based on his disagreement with the medications Oliveto prescribed to him and the fact that he had not been prescribed Xanax or Ativan, even though he had previously taken these medications. (*Id.* at CM/ECF pp. 8, 11, 18, and 19.) While the evidence shows that Oliveto was aware that Plaintiff was not receiving his medication of choice, he chose to prescribe the medications that he believed were medically indicated. (*Id.* at CM/ECF pp. 3, 7, 9-11, and 14.) Plaintiff's disagreement with Defendants' professional judgment does not create a material fact in this case because, as set forth above, prisoners have no constitutional right to a particular course of treatment.

The uncontroverted facts show that Defendants provided extensive care to Plaintiff, they exercised their professional judgment in treating Plaintiff, and Plaintiff has submitted no evidence to the contrary. In light of the undisputed evidence, Gaines and Oliveto provided adequate care to Plaintiff and are entitled to summary judgment. The Eighth Amendment claims against Defendants Gaines and Oliveto are therefore dismissed with prejudice. However, Plaintiff may still have state law claims for medical malpractice. The court declines to exercise jurisdiction over those state law claims given that it is dismissing all federal claims. Therefore, the court will dismiss Plaintiff's state law claims without prejudice to reassertion in the proper forum.

---

[3]Oliveto stated in his Affidavit that Plaintiff was prescribed the same medications throughout his incarceration, but Plaintiff "repeatedly refused" to take them. For example, from March 3, 2008, to April 8, 2008, Plaintiff refused to take any medications. (Filing No. 30-1 at CM/ECF p. 4.)

8

### III. NEWTON'S MOTION TO DISMISS

Newton filed a Motion to Dismiss on February 26, 2010. (Filing No. 37.) Plaintiff did not respond to Newton's Motion and the time in which to do so has now passed.

#### A. Motion to Dismiss Standard

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

#### B. Analysis

Defendant Newton argues that the Eighth Amendment claim against him should be dismissed for failure to state a claim upon which relief may be granted. (Filing No. 38 at CM/ECF p. 7.) The court agrees.

Where a plaintiff fails to "expressly and unambiguously" state that a public official is sued in his individual capacity, the court "assume[s] that the defendant is

9

sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). As set forth by the Eighth Circuit:

> Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. Absent such an express statement, the suit is construed as being against the defendants in their official capacity.

*Id.* These rules have been consistently applied to municipal defendants. *See, e.g., Baker v. Chisom*, 501 F.3d 920, 924 (8th Cir. 2007) (affirming dismissal of claims based on assumption of official capacity only where the plaintiff failed to clearly state the capacity in which he intended to sue several county defendants); *Johnson*, 172 F.3d at 535 (assuming official capacity only claims and affirming grant of summary judgment in favor of county sheriffs). Further, "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. Here, Plaintiff did not specify the capacity in which Defendant Newton is sued. (*See* Filing No. 12.) Therefore, as set forth above, the court assumes that Defendant Newton is sued in his official capacity only. The claims against Defendant Newton, in his official capacity only, are actually claims against his employer, Douglas County, Nebraska.

A county may only be liable under section 1983 if its "policy" or "custom" caused a violation of Plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By and Through Jane Doe B v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

10

>To establish the existence of a governmental custom, a plaintiff must prove:
>
>1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
>2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

The court has carefully reviewed the Amended Complaint. There are no allegations relating to the existence of a Douglas County policy or custom. Specifically, Plaintiff does not allege any pattern of conduct by Douglas County employees, does not allege any "deliberate indifference to or tacit authorization" by Douglas County's policymaking officials "after notice to the officials of that misconduct," and does not allege that a custom or practice "was the moving force behind the constitutional violation," as required by *Jane Doe*. Even with the most liberal construction, Plaintiff has failed to allege sufficient facts to state a claim upon which relief may be granted against Douglas County, Nebraska. In light of this, Plaintiff's claims against Defendant Newton are dismissed.

IT IS THEREFORE ORDERED that:

1. Defendants Gaines and Oliveto's Motion to Dismiss, treated as a Motion for Summary Judgment (filing no. 28), is granted. Plaintiff's Eighth Amendment claim is dismissed with prejudice. Plaintiff's state law claims against these two Defendants are dismissed without prejudice.

2.	Defendant Newton's Motion to Dismiss (filing no. 37) is granted. Plaintiff's claims against Newton are dismissed without prejudice.

3.	All other pending motions are denied.

4.	A separate judgment will be entered in accordance with this Memorandum and Order.

5.	The Clerk of the court is directed to update the court's records in this matter to reflect the actual names of the Defendants. Defendant Denise Green is actually Denise Gaines and Defendant Eugene Olivelto is actually Eugene Oliveto.

DATED this 4th day of May, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.